UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

HARMANJOT SINGH,

     Petitioner,

v.

     No. 6:26-CV-106-H

PHILLIP VALDEZ, et al.,

     Respondents.

## ORDER

Harmanjot Singh illegally entered the United States just over two years ago. He was caught but was released on his own recognizance. Last month, ICE re-detained Singh and placed him in custody pending the outcome of removal proceedings. Before the Court is Singh's habeas corpus petition (Dkt. No. 1) and motion for a temporary restraining order (Dkt. No. 2), both of which contend that his re-detention without a hearing violates the Fifth Amendment's Due Process Clause.

But neither the substantive nor procedural veins of due process entitle an alien to an individualized hearing preceding re-detention. Due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Singh are not entitled to remain free in the United States after entering illegally, but they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned.

Because the legal arguments and facts presented in the petition are indistinguishable from those addressed in the Court's prior decisions denying relief, "it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus. 28 U.S.C. § 2243. Thus, while the Court would ordinarily issue an order to show cause, it

exercises its discretion to forgo that step here.  *Id.*; *see Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998).  The petition (Dkt. No. 1) is denied and the TRO motion (Dkt. No. 2) is denied as moot.

## 1.    Background

Singh was detained while illegally crossing into the United States at or near San Luis, Arizona in October 2023.  Dkt. No. 1-1 at 1.  Amidst a wave of illegal entries across the U.S.-Mexico border and a resulting lack of space to hold detainees, ICE released Singh into the United States on an order of recognizance.  *See* Dkt. No. 1-2.  At that time, Singh received a Notice to Appear, charging him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Secretary of Homeland Security."  Dkt. No. 1-1 at 1; *see* 8 U.S.C. § 1182(a)(6)(A)(i).

Last month, ICE re-detained Singh pending removal and placed him in custody at the Eden Detention Center in Eden, Texas.  Dkt. No. 1 ¶ 56.  Singh now seeks relief under the writ of habeas corpus, alleging that his re-detention without a prior hearing (*see id.* ¶ 40; Dkt. No. 3 at 5) or, in the alternative, a subsequent bond hearing (*see* Dkt. No. 1 ¶ 57) violates the Due Process Clause.  *See id.* ¶¶ 58–66.

## 2.    Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2).  With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases.  *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).  Habeas exists solely to "grant relief from unlawful imprisonment

or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).  Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995).  A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require."  28 U.S.C. § 2243.

**3.    Analysis**

The Court agrees that the Fifth Circuit's recent decision in *Buenrostro-Mendez v. Bondi* does not directly address questions of due process in the context of an alien detained pending removal proceedings.  *See* 166 F.4th 494 (5th Cir. 2026).  Thus, the Court turns to Singh's arguments.

While Singh frames his claim as one of procedural due process (*see* Dkt. No. 1 ¶ 39), parts of his petition sound in substantive due process concerns (*id.* ¶¶ 8, 64).  The Court has considered whether the Due Process Clause entitles illegal aliens to individualized bond hearings in numerous prior cases.[1]  Singh's claim regarding the right to a pre-detention hearing, while distinct, rests on the same legal contentions.  At any rate, the Court considers the arguments raised in Singh's petition (Dkt. No. 1) and the briefing related to his TRO motion (Dkt. No. 3) to address whether re-detention without a preliminary or post-hoc bond hearing violates the substantive and procedural arms of the Due Process Clause.  The answer is no.

---

[1] *Diaz Patino v. Villegas*, ___ F. Supp. 3d ___, No. 1:25-CV-276, 2026 WL 673166 (N.D. Tex. Mar. 9, 2026); *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 2026 WL 81679; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025).

Start with substantive due process.  That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'"  *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)).  While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures.  The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens."  *Muñoz*, 602 U.S. at 911–12.  To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens."  *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention.  In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings.  In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process."  *Id.*  Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal."  *Id.* at 528.  It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings."  *Id.* at 526.  And it equally follows that the Government, having determined that a person is here illegally, need not hold some individualized hearing before taking that person into

– 4 –

custody.  *See* 8 U.S.C. § 1225(b)(2)(A).  Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

A procedural due process claim fares no better.  As an "applicant for admission," Singh has "only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

Despite this, Singh relies on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See* Dkt. No. 1 ¶¶ 46–47, 61.  The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges.  The Supreme Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims."  *Dusenbery v. United States*, 534 U.S. 161, 168 (2002).  In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

The application of *Mathews* to Section 1226 cases is "unwarranted on the test's own terms."  *Ladak v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-194, 2025 WL 3764016, at *7 (N.D. Tex. Dec. 30, 2025).  The Supreme Court applied *Mathews* in *Landon v. Plasencia*, emphasizing that its balancing test was appropriate for "long-time lawful permanent resident[s]" in contrast to "detentions of aliens at the border or returning lawful permanent residents who had spent time abroad."  *Id.* (citing 459 U.S. 21, 32–34 (1982)).  Aliens in the former category have "gain[ed] admission to our country and [have begun] to develop the

ties that go with permanent residence," meriting a level of due process more analogous to that of a citizen. *Landon*, 459 U.S. at 32. In the latter category, aliens "request[] a privilege and [have] no constitutional rights." *Id.*; *Thuraissigiam*, 591 U.S. at 138–39 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") (quotation omitted). Critically, aliens who are released into the United States pending removal "are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (internal quotation marks omitted); *see* 8 U.S.C. § 1182(d)(5)(A) (noting that paroled aliens are not admitted and are "dealt with in the same manner as that of any other applicant for admission to the United States"); 8 C.F.R. § 1.2 (same).

In response, Singh relies on several district court decisions that reached the opposite conclusion. The chief of these cases is *Lopez-Arevelo v. Ripa*, where the Western District of Texas distinguished *Thuraissigiam* as a case regarding due-process rights in matters of deportation, as opposed to detention. 801 F. Supp. 3d 668, 682 (W.D. Tex. 2025).[2] That court also cited the decisions of several circuit courts that analyzed Section 1226-based due-process claims. *Id.* at 683. On that reasoning, it applied *Mathews* and ordered the petitioner's release. *Id.* at 685–88. But *Lopez-Arevelo* is unpersuasive for several reasons.

---

[2] Singh cites a number of Western District of Texas cases, all of which are directly or indirectly derivative of *Lopez-Arevelo*. *See, e.g.*, *Tisighe v. De Anda-Ybarra*, No. 3:25-CV-593, Dkt. No. 4 (W.D. Tex. Dec. 5, 2025) (granting petition in part in light of *Lopez-Arevelo*); *Hassen v. Noem*, No. EP-26-CV-048, 2026 WL 446506, at *1 (W.D. Tex. Feb. 9, 2026) (relying on *Lopez-Arevelo* derivative case for procedural due process discussion). The same is true of a decision of a magistrate judge in this district, which he cites. *Parada-Hernandez v. Johnson*, No. 25-CV-2729, 2025 WL 3465958 (N.D. Tex. Oct. 29, 2025). The remaining cases cited by Singh are either unreasoned or are bound by unreasoned circuit precedent. In light of the discussion above, these unreasoned cases are unpersuasive.

First, *Lopez-Arevelo*'s characterization of *Thuraissigiam* is almost the reverse of the Supreme Court's reasoning and holding.  True, the *Thuraissigiam* petitioner did not seek "release from custody."  591 U.S. at 115.  He sought only to secure further opportunity for immigration relief.  *Id.*  But the Court denied the petitioner's due process claim in reliance on "more than a century of precedent."  *Id.* at 138.  Unsurprisingly, that long legal tradition, which *Lopez-Arevelo* does not address, rested upon aliens seeking release from detention.  *See, e.g.*, *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892) (recognizing the baseline requirements and limits of habeas corpus for unadmitted aliens).  Far from suggesting a divergence, *Thuraissigiam* reinforced a longstanding tradition that "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application."  591 U.S. at 139 (quoting *Landon*, 459 U.S. at 32).  That includes detention as much as it includes the underlying deportation proceeding.

Second, and relatedly, recent Supreme Court precedent suggests pre-removal detention cases are cut from the same cloth as *Thuraissigiam*.  In *Demore*, the Supreme Court reasoned that "deportation proceedings 'would be in vain if those accused could not be held in custody pending the inquiry into their true character.'"  538 U.S. at 523 (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)).  It therefore upheld a petitioner's mandatory detention "for the limited period of his removal proceedings" under Section 1226(c).  *Id.* at 531.  Congress provided process, and the petitioner in that case was not due anything more.

Third, the *Lopez-Arevelo* court errs in suggesting that due process is distinguished by "place—not status."  801 F. Supp. 3d at 684; *Ochoa v. Vergara*, ___ F. Supp. 3d ___, No. 1:26-CV-266, 2026 WL 482211, at *2 (W.D. Tex. Feb. 20, 2026) (same).  That suggestion

– 7 –

cannot be squared with *Thuraissigiam*, which makes clear that "place" is not the relevant consideration and dismissed place-based distinctions as rendering the traditional admission-based system of due process for aliens "meaningless." 591 U.S. at 139. "On the contrary," it said, "aliens who arrive at ports of entry—even those paroled elsewhere in the country *for years* pending removal—are treated for due process purposes as if stopped at the border." *Id.* (emphasis added) (internal quotation marks omitted).

Fourth, the case law upon which *Lopez-Arevelo* relies provides no persuasive reasoning in its favor. Only one of the circuit cases on which it relies provides its reasoning for applying the *Mathews* factors, and even that decision fails to consider the Supreme Court's emphasis on limited process articulated in *Thuraissigiam*, *Landon*, *Demore*, and many other cases. *Black v. Decker*, 103 F.4th 133, 147–51 (2d Cir. 2024) (adopting *Mathews* because of the consensus of other circuits and the Supreme Court's application of *Mathews* outside of the immigration context). In light of these considerations, *Lopez-Arevelo* fails to persuade. *See also Diaz Patino*, 2026 WL 673166, at *4–5 (same).

As the Fifth Circuit observed in *Buenrostro-Mendez*, Congress has set forth a detailed, if rigid, system for detention. *See* 166 F.4th at 498. Under Section 1225(b)(2)(A) of the INA, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). No part of the statute "says anything whatsoever about bond hearings." *Id.* Nor does it, for that matter, say anything about pre-detention hearings. Accordingly, Singh is not entitled to a bond hearing as a matter of procedural due process.

**4.     Conclusion**

In short, Singh, as an "applicant for admission," is properly detained under Section 1225(b)(2)(A). *Buenrostro-Mendez*, 166 F.4th at 498. And the Due Process Clause does not require a bond hearing in these circumstances. Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied. Singh's TRO motion (Dkt. No. 2) is denied as moot.

The Clerk of Court is directed to serve this Order electronically on the United States Attorney's Office for the Northern District of Texas pursuant to the current Service of Process Agreement for federal habeas petitions under 28 U.S.C. § 2241.

So ordered on March 20, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE